AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

**OFFENSE CHARGED**

Disposing of a Firearm by Providing it to a Convicted Felon, 18 U.S.C. § 922(D)

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

PENALTY: FOR EACH COUNT:
Maximum Term of Imprisonment: 10 years
Maximum Term of Supervised Release: 3 years
Maximum Fine: $250,000, or if greater, twice gross gain or loss
Mandatory Special Assessment: $100

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FILED
2017 FEB -3 A 11:40
SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA.

**DEFENDANT - U.S**

▶ APRIL DIANE MYRES

DISTRICT COURT NUMBER

3:17-70071 LB

MAG

---

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
Federal Bureau of Investigation

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   [ ] U.S. ATTORNEY   [ ] DEFENSE
} SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   BRIAN J. STRETCH
[X] U.S. Attorney   [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   AUSA Jeffrey Shih

**DEFENDANT**

**IS NOT IN CUSTODY**
1) [ ] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶ _____
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)
_____

**IS IN CUSTODY**
4) [X] On this charge
5) [ ] On another conviction   } [ ] Federal  [ ] State
6) [X] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution
_____

Has detainer been filed?  [ ] Yes  [ ] No   } If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year 2/2/2017

Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

[ ] This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
[ ] SUMMONS  [ ] NO PROCESS*  [X] WARRANT   Bail Amount: NO BAIL

If Summons, complete following:
[ ] Arraignment  [ ] Initial Appearance
Defendant Address:
_____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | | |
|---|---|---|
| United States of America<br>v.<br>APRIL DIANE MYRES<br><br>Defendant(s) | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:17-70071 LB |

FILED
2017 FEB -3 A 11: 40
SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA

MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  March 25, 2016  in the county of  San Francisco  in the
Northern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(D) | Disposing of a Firearm by Providing it to a Convicted Felon<br><br>Maximum Term of Imprisonment: 10 years<br>Maximum Term of Supervised Release: 3 years<br>Maximum Fine: $250,000, or if greater, twice gross gain or loss<br>Mandatory Special Assessment: $100 |

This criminal complaint is based on these facts:
Please see the attached Affidavit of FBI Special Agent Joseph Schadler, attached hereto and incorporated herein

☑ Continued on the attached sheet.

Approved as to Form:
_____
AUSA Jeffrey Shih

_____
Complainant's signature

FBI Special Agent Joseph Schadler
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2-3-2017

_____
Judge's signature

City and state:  San Francisco, California   Hon. Laurel Beeler, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A CRIMINAL COMPLAINT

I, JOSEPH SCHADLER, being first duly sworn, hereby depose and state as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an arrest warrant application for April Diane MYRES, for disposing of a firearm by providing it to a convicted felon, in violation of 18 U.S.C. § 922(d). For the reasons set forth below, I believe that MYRES provided a Glock 17 9mm pistol (serial number BMP254), which had been previously issued to San Francisco Sheriff's Deputy April Diane MYRES, to Antoine Lamar FOWLER, who had been previously convicted of a felony.

2. I have participated in the investigation of MYRES and FOWLER, and I have received information about matters relevant to this investigation from, among other sources, oral and written reports from federal and local law enforcement officials, including agents and analysts of the Federal Bureau of Investigation, officers of the San Francisco Police Department, Deputies of the San Francisco Sheriff's Department, and Investigators of the San Francisco District Attorney's Office. Since this affidavit is being submitted for the limited purpose of securing the requested arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish the necessary foundation in order to obtain the particular warrant at hand.

3. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United

1

States who is empowered to conduct investigations of and to make arrests for offenses enumerate in Title 18, United States Code, Section 2516.

4. I am a Special Agent with the Federal Bureau of Investigation and have been so employed since January, 1999. I have been assigned to the San Francisco Field Division since September, 2004. Currently, I am assigned to the Civil Rights/Public Corruption Squad, which investigates the abuse of public office in violation of criminal law, to include fraud, bribery, extortion, conflicts of interest, and embezzlement. During my FBI employment, I have participated in numerous search warrants in criminal investigations. As a federal agent, I am authorized to investigate violations of the laws of the United States and am a law enforcement officer with authority to execute warrants issued under the authority of the United States.

5. I attended and successfully completed formal classroom and field training at the FBI Academy's Basic Agent Training in Quantico, Virginia. I received sixteen weeks of instruction in federal law and court procedure, investigative techniques, evidence collection, preparation of search warrant affidavits, investigations of fraud against the government, computer-related investigations, interviewing and interrogation, firearms training, defensive techniques, Title III investigations, and practical arrest scenarios. My training and experience includes, but is not limited to, narcotics, computer crimes, crimes against children, violent crimes, white collar fraud, public corruption, organized crime, and fraud against the government. I also received additional formal and on-the-job training from the FBI, as well as from the United States Attorney's Office and other federal agents who have done extensive work in the areas of financial crimes and public corruption. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and

witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

6. MYRES is a Deputy employed by the San Francisco Sheriff's Department (SFSD). MYRES resides on Tocoloma Avenue in San Francisco, California ("MYRES Residence") and has been employed by the SFSD since July 8, 1996. MYRES has two sons: 1) A.J.; and 2) C.P., a Police Officer with the San Francisco Police Department (hereafter "SFPD").

7. Antoine FOWLER (hereafter "FOWLER") was housed in San Francisco County Jail (hereafter "SFCJ") from February 27, 2010 until his release on January 11, 2016. FOWLER was convicted of California Penal Codes Section 12280(a)(1) (manufacture, transport, sell or possess an assault weapon) and was sentenced to twelve years.

8. Federal Bureau of Investigation Special Agent Edmund Ewing (SA Ewing) interviewed E.L., who was a cellmate of FOWLER. E.L. pleaded guilty in district court to violations of 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 844(a). He was sentenced on April 14, 2016, to 25 months in prison and a three year term of supervised release. I have been informed by the U.S. Attorney's Office that E.L. did not plead pursuant to a cooperation agreement, but that his cooperation was taken into account by the U.S. Attorney's Office in making its sentencing recommendation.

9. E.L. was housed in San Francisco County Jail (hereafter "SFCJ") starting in June of 2015. E.L. stated that MYRES and FOWLER had an intimate relationship while FOWLER was E.L.'s cellmate. MYRES and FOWLER would speak together near the bars of the cell and force E.L. to wait at the back of the cell. E.L. and FOWLER would go to the gym separately from other inmates, and while there, FOWLER and MYRES would meet privately, out of sight of inmates and other deputies. When FOWLER communicated with MYRES, he referred to MYRES as "Scarlett Red" or "Red Scarlett." E.L. overheard plans between FOWLER and MYRES to take a vacation in Hawaii together. E.L. also said MYRES procured a Glock pistol

3

for FOWLER with a 30-round "clip." FOWLER did not have the weapon in jail, but he had pictures of the gun and E.L. said FOWLER believed MYRES would get the gun to FOWLER once FOWLER was released. E.L. did not ask for anything in exchange for the information he provided, however, the United States Attorney's Office did move E.L. to a federal correctional institution since E.L. was concerned for his safety if he remained in the San Francisco City and County jail.

10. On January 11, 2016, at approximately 4:30 pm, Antoine FOWLER was released from SFCJ. FBI agents conducting a physical surveillance of FOWLER following his release observed FOWLER enter a Honda Accord in front of the entrance to SFCJ. The driver of the vehicle drove what appeared to be counter-surveillance maneuvers through downtown San Francisco, then drove onto Tocoloma Avenue, San Francisco and stopped in front of what I know to be the MYRES Residence. From their vantage point, agents could not see if FOWLER exited the vehicle and entered the house.

11. On March 25, 2016, MYRES filed a report with the San Francisco Police Department (SFPD) stating her residence had been burglarized (Case #160246976). In this report, MYRES claimed numerous items were stolen, including her SFSD-issued Glock 17 9mm pistol (serial number BMP254), ballistic vest, and Motorola hand radio.

12. That same day, MYRES spoke with the investigating SFPD officer. She told the officer she had a functional, motion-sensing camera mounted to her residence at the time of the incident. When the SFPD Officer asked to view footage from the camera, MYRES advised him there were no saved video clips from March 24, 2016, because she had already deleted the footage. SFPD determined the first saved video on MYRES' system was MYRES' arrival at her residence at 07:33 am on March 25, 2016. SFPD was therefore unable to review any video of the time period during which MYRES claimed the burglary took place from MYRES' surveillance system.

13. FBI SA Ewing interviewed MYRES on March 31, 2016. When SA Ewing asked

4

MYRES about the reported theft of her Glock pistol, MYRES claimed an individual named L.C. was responsible. MYRES did not say L.C. was her ex-husband. During her interview, MYRES was unable to answer questions regarding the state of the windows in her residence, and instead responded that SA Ewing should refer to the statement she previously provided to SFPD.

14. According to MYRES, the cardboard box containing MYRES' body armor was not marked and was located in MYRES' garage among other boxes of similar shape, color and size. The box containing the body armor was missing after the burglary, but the surrounding area in the garage did not appear disturbed.

15. SA Ewing asked MYRES numerous times for the names of overnight guests, roommates, and other cohabitants at the residence for the purpose of eliminating authorized individuals while identifying fingerprints, but MYRES did not ever mention FOWLER. MYRES refused a request to obtain fingerprints from the basement/point of entry area. Before leaving the residence, SA Ewing requested telephone contact information from MYRES. Although MYRES' cellular telephones were in plain view and MYRES had received incoming calls on these telephones during her interview, MYRES refused to provide these numbers.

16. On April 1, 2016, SA Ewing returned to MYRES' residence with a member of the FBI's Evidence Response Team to obtain fingerprints. Despite several attempts to convince her to allow agents into her residence, MYRES stated no fingerprints could be taken. MYRES said agents should call her instead of stopping by her house going forward. In a recorded statement to Farmers Insurance on May 25, 2016, MYRES falsely denied that Agents returned to take fingerprints following their initial interview.

17. When SA Ewing asked if MYRES had seen anyone suspicious near the house, or if anyone out of the ordinary had been in or near the house in the time period before the burglary, she responded "no." In both FBI and SFPD interviews, MYRES stated she left her residence at approximately 6:00pm with its doors and windows secured.

18. Further investigation revealed a residence across the street from the MYRES

Residence had a video surveillance system installed in a front window with a clear view of the MYRES Residence. This video surveillance system was recording during the time period of 3/24/2016 to 3/25/2016. The FBI reviewed the video and observed what appeared to be several dark-skinned males and one lighter-skinned male entering and exiting the residence during the late morning and afternoon while MYRES was present in the residence. MYRES can be seen interacting with these individuals when a UPS package was delivered to her front door. MYRES can be observed loading a large bag into the red Mercedes then driving away from the residence in the red Mercedes at approximately 5:54pm while at least some of the males were still present in the residence. The males continued to move in and out of the residence until approximately 7:49pm., when the last individual left empty-handed. The video was obstructed from 8:09pm to 10:04 pm on March 24, 2016 as well as from 10:51pm on March 24, 2016 to 6:39am on March 25, 2016. The video is not clear enough to be able to see faces of the individual males sufficient to make an identification.

19. During the recorded May 25, 2016 interview with K.H. from Farmers Insurance, MYRES said that the last time her sons were at the residence was the Sunday or Monday before the alleged burglary, which MYRES claimed occurred on a Thursday night or early Friday morning. K.H. and MYRES had the following interaction:

    K.H.: Around the time of the theft, was anyone at your home when you were not there?

    MYRES: No, because I was, uh, I had spent the night at my sister's home.

    K.H.: And nobody was at your home while you were gone?

    MYRES: No. Yeah, nobody was there while I was gone.

20. Later during that same interview, MYRES said that her son, A.J., was at the house on March 24, 2016 and had borrowed MYRES' car and had run some errands for her. However, MYRES stated that A.J. left her house before she did.

21. On March 31, 2016, a confidential informant (hereafter "CI1") informed a San Francisco Sheriff's Department ("SFSD") investigator that he/she participated in criminal

activity with MYRES in the past and knew that the recent "burglary" at MYRES' residence was an insurance scam. The SFSD informed me that CI1 did not receive any payments or promises from SFSD in exchange for providing information. At the direction of investigators, CI1 placed a telephone call to a J.M., April MYRES' niece. SFSD IA Sergeant J. Robinson listened to the call. During the call, J.M. told CI1 that Antoine FOWLER was responsible for the burglary. J.M. texted CI1 a photograph of FOWLER "from the Internet." CI1 stated that April MYRES was purposefully vague in her statements to SFPD because she knew officers would suspect the burglary was committed by someone familiar with the residence.

22. On March 31, 2016, Facebook user J.M. communicated with a Facebook account used by A.J. On that day, J.M. sent A.J. a mug shot photograph of FOWLER, with "ANTOINE FOWLER" hand-written underneath the photograph. This is the same photograph that J.M. texted to CI1.

23. On April 1, 2016, J.M. again spoke to CI1 about A.J. According to CI1, J.M. stated that A.J. admitted that he had assisted FOWLER in burglarizing MYRES' residence. A.J. also told J.M. that he had all of April MYRES' jewelry and FOWLER had the Glock pistol and ballistic vest.

24. On May 4, 2016, MYRES submitted insurance claim documentation using the U.S. Postal Service. Documentation retained by Farmers Insurance relating to the claim of MYRES included an envelope sent by US Mail to Farmers National Doc. Center, P.O. Box 268994, Oklahoma City, OK 73126-8994 with a return address of "MYRES 333 Tocoloma Avenue, S.F. CA 94134." A certified mail sticker is affixed to the envelope bearing the number 70151520000330992058. A postage sticker affixed to the envelope appears to show the date May 4, 2016. Contained in this envelope sent via U.S. Mail, was documentation supporting MYRES' claimed burglary, specifically, receipts, an appraisal, and other documentation of items MYRES claimed were stolen. MYRES listed the following items as stolen: a Glock 17 9mm pistol (serial number BMP254), a bullet proof safety vest, a leather duty belt, a flat badge

(custom), an O.C. spray canister, a Motorola hand radio, a Louis Vuitton Artsy MM shoulder bag, a Louis Vuitton wallet, a Louis Vuitton purse, a Louis Vuitton belt, a Louis Vuitton bracelet, a Louis Vuitton umbrella, a Yves Saint Laurent large-grained chain bag (red), a Yves Saint Laurent lipstick-print wallet, a Bony Levy Diamond Initial "A," a Gucci rain boots, a Christian Louboutin Jennifer Perforate Napa Boots, a blue fox fur vest, a Versace leather logo clutch bag, a Manolo Blahnik snakeskin shoes, a 12k white diamond earrings, two California license plates and stickers, $3,500 cash, a Sentry safe electronic portable safe, a HP 17-inch Windows 10 Microsoft office laptop, seven sets of Victoria's Secret lingerie, an Olympus SZ-14 14MP 24x long zoom camera, a Jostens College ring 2 trillion cut diamonds with center gamet stone, a leather gun holster, an OC spray holder, a magazine holder, a flashlight holder, a flashlight Streamlight, a baton holder, 4 belt keepers, a handcuff case, a handcuffs, a radio holder, a handcuff key, a mink jacket, a Louis Vuitton messenger bag, a Chanel large classic metallic calfskin bag, a Louis Vuitton baguette handbag, and a Louis Vuitton wallet. MYRES stated the value of these personal items totaled $66,409.78. MYRES provided copies of receipts from online orders from a computer. MYRES also stated that there was $637.00 in building damage, including a broken closet door hinge and damage to two nightstand handles.

25. On May 14, 2016, at approximately 11:13 am, MYRES sent an eight-page facsimile transmission to the Farmers Insurance National Document Center, facsimile number 877-217-1389, located in Oklahoma City, Oklahoma. A stamp on the facsimile cover page reads, in part, "101 Potrero Avenue S.F. CA 2016 MAY 14 AM 11:10." This location corresponds to the location of MYRES assigned work shift at the time of transmission. The facsimile transmission contains a completed "Proof of Loss" form relating to MYRES' claim of a burglary at her residence.

26. This facsimile cover page includes a handwritten note which states, in part, "PER S.F. CITY CHARTER ALL EQUIPMENT IS MINES AFTER 4 YEARS OF SERVICE. I AM A 20 YEAR VETERAN OF THE SFSD. CAN CONFIRM WITH DIRECT SUPERVISOR."

SFSD Internal Affairs Senior Deputy Mercy Ambat stated SFSD has no such policy and the equipment was furnished to MYRES at no charge.

27. On page two of this facsimile, MYRES lists the name of her direct supervisor as Captain L.A. Senior Deputy Ambat stated MYRES' current supervisor, supervisor at the time of the incident, and supervisor at the time of the facsimile transmittal was and is Paul Del Rosario, not L.A.

28. On page six of this facsimile, MYRES documented items stolen on a "Personal Property Summary Worksheet." MYRES added together the value of items included in this worksheet to calculate a total loss value claimed of $67,046.78. Included in the items comprising this claimed loss are a "Glock 17 9mm" for $480.00, a "bullet proof safety vest" for $500.00 and a "Motorola Hand Radio 16 Channel 2000" for $5,000.00. Senior Deputy Ambat confirmed that each of these items was issued to MYRES at no charge to MYRES and that the San Francisco Sheriff's Department retained ownership of these items.

29. On April 8, 2016, MYRES was issued a replacement Glock 17 pistol, three Glock magazines, a gun lock, a gun case, a belt, a flashlight, handcuffs, a handcuff case, a radio, OC spray, a baton ring, four belt keepers, a holster, and a flashlight holster. MYRES did not have to pay for any of these replacement items.

30. In December 2016, CI1 reported that her son interacted with FOWLER in November at a club in San Francisco and her son recounted the information to CI1. FOWLER told CI1's son that he was upset with MYRES and still had possession of MYRES' duty pistol. FOWLER also bragged that the police still did not have the gun. FOWLER said he was residing at his mother's house. FOWLER'S mother was later identified as T.F., who resides on 106th Avenue in Oakland, California (the "**FOWLER Residence**"). FOWLER also said he still had the key to MYRES' residence and that he was upset that MYRES told the police that FOWLER broke into her house when he had a key and full access to the residence. FOWLER said that MYRES directed him to steal stuff for MYRES in the past. FOWLER said that he recently got

9

into an argument with MYRES' son, A.J., during which a gun was discharged into a wall at the MYRES Residence.

31.     The CI1's son was convicted on California Penal Code (CAPC) section 242 (battery) and sentenced to 36 months of probation and three days in jail for a June 1993 incident. He was convicted of CAPC section 32 (accessory) and was sentenced to three days in jail for a January 1994 incident. He was convicted of CAPC section 496(A) (receive/etc known stolen property), and CAPC section 12025(A)(2) (CCW on person) for a February 1996 incident and was sentenced to 24 months of probation and 90 days in jail. He was convicted of CAPC section 11351.5 (possession/purchase cocaine base) for an August 1998 incident. He had his driver's license suspected for an October 2015 incident.

32.     In January 2017, law enforcement observed FOWLER driving a black Ford sedan bearing California license plate number 7LIZ207 (the "**Subject Vehicle**") as follows:

   a. On the morning of January 15, 2017, law enforcement observed FOWLER driving the Subject Vehicle from the FOWLER Residence in Oakland, and observed FOWLER drive across the Bay Bridge.

   b. On January 23, 2017, at approximately 2:20 pm, law enforcement observed FOWLER driving away from the FOWLER Residence, in the Subject Vehicle.

   c. On January 24, 2017, at approximately 10:56 am, law enforcement observed FOWLER and a black female arriving at the FOWLER Residence, with FOWLER driving the Subject Vehicle. At approximately 2:14 pm, FOWLER drove the Subject Vehicle away with a black female as the passenger.

   d. On January 25, 2017, at approximately 10:43 am, law enforcement observed FOWLER and a black female arriving at the FOWLER Residence, with FOWLER driving the Subject Vehicle. At approximately 2:24 pm, FOWLER drove the Subject Vehicle away with a black female as the passenger.

33.     On February 2, 2017, at approximately 10:00 a.m., FBI SWAT members observed

Case 3:17-mj-70071-MAG   Document 5   Filed 02/03/17   Page 13 of 14

FOWLER driving the Subject Vehicle in the vicinity of Durant and Breed in Oakland, California. After FOWLER brought the car to a stop, FBI SWAT removed FOWLER from the front driver-side of the vehicle and observed that no other persons were in or had access to the Subject Vehicle. While FOWLER was detained adjacent to the Subject Vehicle, FBI Special Agents searched the Subject Vehicle pursuant to a federal search warrant. During that search, FBI Special Agents found a Glock 17 9mm pistol (serial number BMP254) located under the driver-side console of the Subject Vehicle.

34. During the search, initially when asked about MYRES's duty-pistol, FOWLER denied having it but said that he could find it in a day or two. After FBI Special Agents found MYRES's duty-pistol as described above in Paragraph 33, FOWLER denied that it belonged to him. However, after further questioning, FOWLER admitted that MYRES had given her duty-pistol to FOWLER. Further, FOWLER stated that MYRES had given him $2,500 to dispose of her duty-pistol because it had been fired by another individual at her home in an incident in which FOWLER's finger was grazed.

35. On the same day, FBI Special Agents and other law enforcement personnel searched the MYRES Residence. During that search, several of the items that MYRES claimed to have been stolen in the purported burglary on March 25, 2016, were found in her residence.

## CONCLUSION

36. Based on the forgoing, I believe there is probable cause to find that April Diane MYRES, disposed of a firearm by providing it to a convicted felon, in violation of 18 U.S.C. § 922(d).

11

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

Respectfully submitted,

_____
JOSEPH SCHADLER
Special Agent
Federal Bureau of Investigation

Sworn to before me this 3 day of February 2017

_____
LAUREL BEELER
United States Magistrate Judge